Good morning. My name is Linda Su. I'm here representing Nautilus Insurance Company. So we have roughly three broad issues that are before the court today. The first is whether or not the district court was correct in granting my client summary judgment on whether or not it had a duty to defend its insureds, Access and Mr. Wood, as well as Flournoy in the underlying Switzer case. The second issue is whether or not the district court committed error in refusing to allow Nautilus to seek monetary relief as a result of its decision agreeing with Nautilus that it never had a duty to defend, and therefore Nautilus never had a duty to pay any of the defense fees and costs incurred in defending Access, Mr. Wood, and Flournoy in the underlying case. And then finally, the question of whether or not the court has jurisdiction to hear the insured's appeal of the district court's decision declining to entertain its motions under Rule 60. Nautilus declined to brief the response to the duty to defend issues. Access, Medical, and Wood briefed that, but there was no ‑‑ it wasn't addressed in Nautilus's briefing. So how does that affect our analysis here and whether you're going to argue that issue orally that wasn't addressed in your briefs? Yes, I realized that as I was preparing for this hearing that it's my fault I got confused about the nature of the cross appeals and I thought there was going to be a separate opportunity to address the cross appeal. And so it just was a mistake that was made. But fortunately, we've addressed the issue pretty clearly in the underlying briefing. And so it hasn't been ‑‑ we certainly are not waiving that argument. And so I'm more than prepared to argue orally as to why the district court's decision was correct, if I may. All right. Thank you. So this case is clearly controlled by the California Supreme Court's decision in Hartford v. Swift. The issue here, of course, is whether or not the cross complaint filed by Mr. Switzer in the underlying action made any allegations of defamation or disparagement. And we know that the cross complaint contained four separate causes of action for intentional interference with economic advantage, which is not the same thing as a defamation or a disparagement case. There were no allegations of that anywhere in the rather complete, comprehensive cross complaint. And I would submit that there is no Nevada law that actually requires an insurer to look beyond the four corners of the complaint. So the other side cites United National Insurance, which follows California's rule in Gravy-Zurich that insurer bears a duty to defend its insurer whenever it ascertains facts which give rise to the potential of liability under the policy. And at least according to the opposing counsel, there's no Nevada Supreme Court that clearly sets out a four‑corner rule. So do you have a case in mind that clearly sets that out? No, and it may not even really matter in this case, frankly, because the record shows that my client did actually investigate facts beyond the complaint. It was the one that found what we're calling the weed email, which was an email written by a representative of the insured to a third party basically soliciting its business. It did not reference Mr. Switzer or his company by name, and it did not derogate any of the competitor's business dealings or defame in any way. And, in fact, we know from the consolidated appeal, the Rule 60 appeal, the district court pointed out that Mr. Switzer, in response to interrogatories, very clearly stated that he was not making a defamation claim against our insureds. Can I ask a question? Is the underlying proceeding in California or proceedings, are they all concluded at this point, or is there still underlying litigation going on? That's a good question. So there are two sets of underlying litigation still going on, and I'm sure that my adversary would be able to give more information on one of them. My understanding is that there was a trial in the Switzer v. Access matter. Switzer prevailed in that action and got a monetary award. That was appealed, and I was actually just this morning speaking with my adversary. He advised me that the court of appeal has remanded that case back down to the trial court to award travel damages and possibly punitive damages, and that's been appealed. In favor of Switzer. In favor of Switzer, and that's been appealed to the California Supreme Court. And the reason why I ask is, well, number one, it was sort of hard to understand exactly what Nautilus was looking at in making the determination of whether they needed to defend, but say at some point in some of this litigation there was an amendment that alleged a defamation claim. Is it your position that Nautilus would then be on the hook to cover that claim? Let's say, for example, the cross-complaint was amended to state a cause of action for defamation. Or let's say that Mr. Switzer testified in deposition that he was intending to make a defamation claim against the insureds. Or even at trial there was information that Mr. Switzer was attempting to, say, enter a jury instruction for defamation to the jury. And that information was provided to Nautilus. At that point, Nautilus would have a duty to defend that case from that point forward. So your position would be that only once that becomes clear, Nautilus's duty kicks in. You would not then have a retroactive duty, even though you've paid those costs already. You would still be here in court arguing that you're entitled to a reimbursement of fees because as of today or whatever date there is, there wasn't evidence that he was trying to bring a defamation claim. Right. That's correct. And that kind of leads me to what I was going to advise. But what if he said in a deposition, no, my complaint was always intended to state a defamation claim? Wouldn't then your duty have kicked in back to when the cross-claim was filed? No, I would say no because the cross-complaint does not allege defamation. And before that point, Nautilus neither knew or reasonably could have known that Mr. Switzer was intending to bring a defamation claim. And that's the standard for an insurer. But if he filed an amended cross-claim, that would relate back to the date of the original cross-claim. So, I mean, it's interesting. I just think it undermines a little bit your position that you've started out with that you can't go beyond the four corners of the original complaint because it does seem like there are ways and that's what's hard to understand here is where's that limit upon which Nautilus could definitively say I don't have a duty to defend. Well, let me say first of all that I'm not strongly advocating the position that Nautilus should not have looked beyond the four corners of the complaint because, in fact, it did. In fact, the district court in ruling on the Rule 60 motions noted that in a situation where an insurer files a declaratory relief action and then brings a motion for summary judgment and wins, the duty to defend is determined for that period of time only. And then if new evidence comes out afterward, then Nautilus very well may have a duty to defend from that point. And what I was going to advise is that, in fact, as we speak, there is a second lawsuit filed by Access and Wood against Nautilus for alleged breach of contract and breach of the implied covenant of good faith and fair dealing, arising out of the very issues that it raised in its Rule 60 motions, the deposition testimony and what occurred at the trial in the underlying action. Where is that lawsuit filed? That's venued into the United States District Court for the District of Nevada, and I can provide the court with the case number. I believe I have it. But that is pending right now. In fact, we're scheduled to answer that today. But that's based on new evidence that hasn't been presented to the district court in the case that you brought. Well, is it based on the same evidence that we've seen in your second set of appeals? Yes. It's based on the evidence that was submitted in the second set of appeals, the deposition instruction. Okay. Yes, that's correct. Okay. So that will be decided by the district court at some point or another, which is. . . But it already has been decided by the district court here, right, at least in the other appeals that are up before us. There's a question. I want to address that or ask about that because there's a question about whether there's jurisdiction, whether we have jurisdiction to hear those for separate appeals, and I take it your position is we don't have jurisdiction. That is correct. And what's the basis for us lacking jurisdiction? Well, that it's a procedural. . . The court did not rule on the merits of the emergency motion. Basically what it was is after the summary judgment had been decided, the insureds said, whoa, whoa, wait a minute, we have new evidence that the testimony just came out last week that said this or that or in the trial this and that happened. And the court, although it commented on whether or not that would rise to the level of a duty to defend, as a primary ruling it determined that it wasn't going to hear it because procedurally, because it was an issue that the insureds could file a separate lawsuit for, which in fact they have. And so this court does not have jurisdiction to hear a procedural decision. And there's plenty of case law that we've cited in our briefs. So just so I understand the implications of that, if we were to rule in your favor, that from the district court on the first position that you didn't have a duty to defend and reverse the district court on the second one, would that . . . Is your position then that the subject matters of those four appeals would be able to be re-brought up to the district court at that point and access and Flournoy would be able to argue that despite the Ninth Circuit decision, that the district court should somehow rule differently because of the new evidence that hasn't been addressed here? Yes, Your Honor. If this court rules in favor of Nautilus that there was no duty to defend, rules in favor of Nautilus that it should be given the opportunity to present the relief it seeks in the forms of the fees and costs incurred in the underlying case, and that it does not have jurisdiction to hear the Rule 60 appeal, then this would go back to the district court to decide whether and how much money Nautilus could collect from its insurance for the defense fees and costs. Well, but it would also go back that they could make these additional arguments. Is that correct? That is correct. And so there would actually be two separate cases in the district courts, two separately filed cases. There's the case that Nautilus filed that's up on appeal right now, and then there's the separate, totally separate case. And again, if the court would like, I can provide you with the case number. Is that pending before the same district court, the same judge? No, I don't believe it is before the same judge. It's a different judge. Okay. Yeah. So there would be two cases going on in the district court, and I think at that point the parties in the court would need to determine if those needed to be consolidated. I think they would. But there would be, so the issues would be, number one, does Nautilus get its fees and costs back, and if so, how much? And number two, was there a breach of contract and bad faith by Nautilus for failing to pick up the defense at the point that it was advised of deposition testimony and or trial events? Let me turn you back for a moment to the question about whether the district court abused its discretion in not giving Nautilus reimbursement under Section 2202. Is that an issue that we would need to certify to the Nevada Supreme Court, given that there's a split in the states as to whether reimbursement is allowed or not and no clear ruling in Nevada? Or is it your view that there is some clear ruling in Nevada state court on that point? I believe that there is clear ruling in Nevada state court on that issue, that Section 2202 does allow and, in fact, I would say mandate a district court to provide the relief that Nautilus is seeking in this case. If there's state court precedent for that, I mean, in California, certainly, Nautilus, if Nautilus didn't owe no duty to defend and we affirm that ruling, then Nautilus in California would be entitled to reimbursement of the amount spent under a reservation of rights. But I didn't see Nevada having ruled on that issue. The two main cases are the Omaha case, which is a California decision out of the United States District Court in this district, and then the Penthouse International case, which I'm trying to remember what. No, your Honor is correct. That did also come from California. I believe that Nevada case law on the issue is from unpublished decisions, frankly. So, frankly, I think your Honor raises a good point that that might be something that would need to be certified to the Nevada Supreme Court. I'm not saying that that's the primary position I'm taking. I think that it's more of a Federal court procedural issue than it is. Well, 2202 is, but if there's no state right to reimbursement, then the states, Illinois, for example, strongly says, oh, no entitlement for reimbursement unless you have something in your insurance contract. I apologize. I misunderstood. The issue of whether or not an insurer is entitled to reimbursement has been decided by the United States District Court, District of Nevada, in the Capital Indemnity Corporation v. Blazer decision, which was cited in our brief. And in that particular case, the court found that because the insurer did not submit a reservation of rights letter stating that it was reserving the right to seek back defense fees and costs, that the insurer in that case could not collect. So a negative of this one. But even so, that's a Federal District Court as opposed to a Nevada State Court decision. Your Honor is correct that I don't believe that there are any published Nevada decisions on point on that issue. I would state, however, that Nevada courts have expressly stated in more than one case that when there is no case law on point, they look to and rely upon California law in rendering its decisions. But the California cases, was that a California Supreme Court case, a State Court case? I think those were just Federal cases interpreting California law as well. Well, no. We have the Bus v. Superior Court case and we have the Scottsdale v. MV Transportation case, both of which are California Supreme Court decisions. I see I have two minutes left. If I'd like to reserve my time. All right. Thank you. Thank you. May it please the Court, Margaret Foley, Counsel for Floranoi Management, LLC. My co-counsel and I are dividing our time. And we've broken it up according to issues. So if it turns out to be a little disjointed, because I know the questioning wasn't completely separate, I apologize in advance. And since we are. So what issues are you planning to address then? I'm planning to address the 2202, the reimbursement. So. But let's say that the Nevada Supreme Court had ruled on this issue or has, as opposing counsel says, stated that they adopt the California court's view whenever the Nevada courts have not yet addressed it. So that would say, in fact, under California rules, the insurer would clearly be entitled to reimbursement based on the reservation of rights letters. So assuming that Nevada had adopted that rule, doesn't that mean that the district court would have discretion under 2202 to make such an award, or is your argument that it would not? It possibly would, but I can't imagine the Nevada Supreme Court deciding that. As you saw in the Andrew case, in our 28-J letter, Nevada is far more protective of the insured than the insurer, and gives the insured benefit of doubt on most things. The other issue is that under Nevada law, there's no the right to, you know, contracts are read very strictly under Nevada contract law, and it wouldn't, the idea that you could imply something here, an additional agreement for reimbursement that was never included in the insurance contract, I think is a very hard sell. If the district court was correct that Nautilus had no duty to defend, then your client was not entitled to any amount of defense costs. So strictly reading the contract, your client would have been unjustly enriched and would have to provide restitution of that amount. Isn't that right? Isn't that just a state law principle? It's an equitable consideration that potentially the district court could apply in that situation. However, our position, as you know, is that the duty to defend question was decided wrongly, and in the cases, the unpublished cases and district court cases in Nevada Federal that talk about this, there's, they were usually very clear that there was no duty to defend as a matter of law, that the exclusion they dealt with was completely outside based on the terms of the agreement. Just getting back to the 2202 issue for one minute, your briefing didn't cite any cases where Nevada Supreme Court had gone the other way. So is this an issue that should be certified to the Nevada Supreme Court in your view? We would welcome certification to clarify the law here. Okay. But given the, as I said, the Nevada court's sort of protection, if you will, of the insured, I'm not sure that it would turn out to be something useful for Nautilus. Okay. And, yes, go ahead. Can I, and maybe this is going beyond the issue that you're addressing. Sure. And if it is, I'll just. Sure. But this, the cases that I read suggested that as to the new appeals on the indicative ruling that were then appealed up that the district court refused to give your clients, why didn't you ask for a limited remand to address those? It seems to me we're in a tough, not that tough of a spot. We've been in worse spots before. Right. No, I agree. But we decide this question and then we send it back down and there's this new evidence that has to be considered and everything we say could just end up being for naught, depending on what that new evidence is. And it's not clear to me that we have jurisdiction to decide all that. So I'm just wondering why you didn't ask for a limited remand if you thought that that was such strong evidence to be considered. Well, we thought that we did it as we went and, you know, the appellates, the appeals sort of grew, the number of them grew, and it wasn't really terribly strategic. It was just the way things played out. Do you believe we do have jurisdiction to decide those indicative rulings on appeal? I think you do because they are now final and we appealed them independent. There were final post-judgment orders and we appealed the judgment timely and we also appealed each of those orders timely. So I think they're integral to the judgment in this situation. So they're final in the sense that the district court denied them on the basis of not having jurisdiction? Yes. And the jurisdictional question has also been interpreted as a substantial question, like it's just purely jurisdictional. The idea that it's not reviewable is belied. And I'm sorry, I don't have the case in front of me. But I have seen where it's not necessarily just a jurisdictional question and also if it's independently appealed, then the court of appeals may choose to accept it. So opposing counsel says this very issue is currently ongoing in underlying in the district court as to whether this new evidence changes the landscape such that Nautilus owes a duty to defend. Is that correct? Yes. There are definite overlapping issues in the current bad faith case in the district court now before a different judge. And I do think this Court has jurisdiction to rule. It might be appropriate to stay ruling on these appeals we're arguing today pending further. On the four indicative, the appeals of the four indicative rulings or on the whole  I think that would be sort of an issue-by-issue basis. Why would we appeal to wait and see what the district court did? Why would you stay? Yes, sorry. Why would we stay these appeals to wait and see what the district court did in a different case? In order to avoid some kind of piecemeal resolution. So, yeah. Counsel, if we decide the appeals that we have now, could we, would that decision have any issue preclusion or claim preclusion effect on the current issues? Conceivably it would. It could. If we decided these appeals but included a footnote saying our decision was not intended to have any issue preclusion or claim preclusion impact on the new evidence being considered, then would that be effective? Yes. And I think that would be procedurally correct because the district court proceedings are ongoing in the other case. So it's a bit hard to say it's preclusive when it's ongoing. And the issues are slightly different, the overlapping. So because we're appellant on another case, I would like to reserve three minutes. And if you have further questions for me on the issue here, the reimbursement of defense costs. So my understanding was that you were going to raise all of your claim, all of your arguments here rather than going back and arguing again. Arguing again in the current district court proceedings? No, here. So if you had wanted to have an additional time to respond to Nautilus's arguments, is that what you're saying? No. Because that would come out of your time now. Right. No. I mean, I think that I've covered my issue, and if you don't have further questions, I think the duty to defend is a meatier issue, and my co-counsel would appreciate the extra time. Okay. Thank you. Okay. Thank you. Good morning. May it please the Court, my name is Jordan Schnitzer. I represent Sunnywood and Access Medical. I do want to address a couple of questions the panel asked regarding the 2202 issue. There was a recent case, Century Security Company v. Andrew. And there's a quote from that case that says, and the issue in that case was whether or not the insurer can be responsible for consequential damages when it doesn't defend, when it's later found out that there's a duty to defend. And what that court said was, nonetheless, the insurer can always agree to defend the insured with the limiting condition that it does not waive any right to later based on the terms of the insurance policy. If the Nevada Supreme Court felt they had a right to reimbursement, they would have said it in that Andrew case. What they said was, you have the right to pull coverage later, but you don't have the right to reimbursement. No, they didn't actually address the reimbursement issue. Is that correct? That is correct. But I think, I certainly think it is implied, and as you said, we would welcome certification because I'm confident that that's the way the Nevada Supreme Court would go on that. Nevada is much more protective of its insureds than in California. We don't always rely on California. For example, Nevada doesn't have the Howell decision in personal injury cases. Nevada doesn't have the genuine dispute doctrine. When it's in the insured's favor, they go that way. For example, they adopted CUMA's counsel. But in the Andrew case, they rejected the California rule about consequential damages based off the breach of the duty to defend. And so we don't always follow California. But this only goes to the reimbursement, right? Correct. So after the district court's decision that Nautilus didn't have a duty to defend, your position would be that, depending on what we do on appeal, that would be enough to cut off Nautilus' liability going forward. Correct. And then, Judge, you asked about unjust enrichment. Wouldn't that be an unjust enrichment claim? If you believe there's a potential, here's the issue they've got. They didn't allege that in the complaint. You can't just skip due process and say, okay, after all this, I'm just going to award an unjust enrichment claim. You have to have a trial on the merits on that. So you're saying, if I understand you, that Nautilus could then bring a separate action for equitable relief? Sure. Anyone can bring any action that they want. But they didn't do it in this case is the point. And when you look at the Blazer case that they cited, they alleged it in their complaint. When you look at the ProBuilders case that they cited, they alleged it in their complaint. They didn't allege it in their complaint here. It never came up until after summary judgment. But if we remand this down, they could actually just amend their complaint to add that then. Well, the court actually already denied their motion to amend, saying we've already gone through summary judgment. I think they'd have to file a new action if they wanted an unjust enrichment claim. And then we could adjust the merits of whether or not they're entitled to it under Nevada law. That would be my position. Just fundamentally, I think I know the answer to this, but why do you think Nautilus had a duty to defend here? You're asserting that the district court got it wrong when it found that. Yes, absolutely. What's your basis for that? Several things. The United National Frontier case says that the insurer bears the duty to defend whenever it ascertains facts which give rise to the potential for liability. So wherever it's possible, wherever you have facts where it's possible that the insured could be liable, you have to defend. And any doubt has to be resolved in the insured's favor. But doesn't that just give your client the opportunity to always claim that there's some set of facts? I mean, in a weird way, it incentivizes your client to actually go out and defame someone so that then you can say, well, you have a duty to defend because I sent this e-mail. Granted, they didn't think it was defamation, but we meant it to be defamation, so therefore you have a duty to defend. I mean, I think that's. . . Well, that's not that far stretched from what the facts here are. You're claiming defamation based on an e-mail that nobody understood what the heck it even meant until there was a deposition testimony about it. Well, I think the underlying parties knew what it meant, and that's when we get back to the duty to investigate. But nobody else did. I mean, I don't think you're defamed. I don't think you're defamed unless somebody else that you send it to knows who you're referencing. Well, Ted Switzer knew who was being referenced. The element would have to be publication of a defamatory remark, I think, is what Judge Nelson's referencing. And since his name was not mentioned in the e-mail, there was no publication of to the extent saying that he was banned in California was a false statement and damaging to his reputation. I would disagree with that because Cottage Hospital knew who its sole supplier of AlphaTech products was. So if I say to Cottage Hospital, your supplier is banned from selling the products now, Cottage Hospital knows that's publication. Cottage Hospital knows who it's talking about. So there's evidence in the record to that effect? There's evidence that, yes, there is evidence in the record that AlphaTech, excuse me, that Ted was the sole supplier to AlphaTech at the time this e-mail went out. And that's part of the duty to investigate. And the issue is, is there potential for coverage? Jackie Whitey is saying, I wrote this e-mail. It's about Ted Switzer. Cottage Hospital knows who the sole supplier of AlphaTech products is. So when Cottage Hospital knows who the e-mail is about, that's the publication. And it's the opposing counsel argues that the complaint doesn't allege defamation, libel, slander. I don't know if during the course of the trial there was any argument to that effect related to the, I think you're arguing, the interference with business opportunity. Is that right? Correct. So as the trial, prospective economic advantage, here we are, interference with prospective economic advantage. And so the argument they make is there was no allegation of an independently wrongful act. And your argument is, well, it could have been. Had they raised it, it could have been defamation, slander, libel. But, in fact, it was never raised. Is that correct or not correct? Well, I would disagree with you on two. One is on their premise that it's got to be specifically set forth, because the 2018 Century Surgery v. Andrew case says, all it takes is facts are alleged in the lawsuit. And we have those facts in the lawsuit, which is Jackie saying, I sent this e-mail about Ted Switzer. And Ted Switzer, first in deposition, saying, I was not banned. Was an independently wrongful act ever alleged for that particular claim of interference with prospective economic advantage in the underlying lawsuit? That is the cause of action that requires the independent. Right. And was there an independent wrongful act alleged in the lawsuit that came out of trial or elsewhere? And that's the issue. It was never articulated well. So it wasn't. You're saying that at the trial, an independently wrongful act was not alleged? No. There are facts of an independent wrongful act. Counsel had problems articulating it. And actually, I wrote a quote down, and this is page 96 and 97 in our excerpt of records. The judge said, well, this was after the e-mail came out, and they're talking about the relevance of these communications. And the judge says, well, I think it is relevant to their charge that basically they use Flournoy as the instrument to take over the account for access, which is their argument. Maybe that's my interpretation of their argument. I will ascribe it to them. So even the judge is saying counsel is having a hard time articulating exactly the case. Okay. But that doesn't allege any independently wrongful act. No. My point is that. Or defamation or slander. Right. My point is that the judge was having a hard time understanding what they were trying to articulate. But Ted testified, quote, I was not banned. Dixie testified, quote, I was not banned. And then we go to the jury instruction. And, again, the attorney wasn't asking for the right instruction. He's asking for a false statement instruction, false representation. And the judge says, what representation are you talking about? And the lawyer said, the representations that were made by Ms. Whitey and all those e-mails I was reading off. It doesn't matter that he didn't. But he doesn't say their purpose or that they were defamatory or libelous or slanderous. He doesn't say anything. Well, he's saying they're false representations. And so my point is, it doesn't matter if the lawyer in the underlying case can't articulate well what his cause of action is. The test is whether or not there's the potential for coverage. If he had said that's defamation and let's amend to conform to the evidence, then there is coverage. Not only is there a duty to defend, there's coverage. And so the duty to defend doesn't turn on whether or not the underlying counsel articulates his cause of action well. That's not the test. The test is, are there facts in the record throughout the course, and there are, that show a potential for coverage? And that's what we've got here. Are they facts, counsel? Do they have to be facts alleged in the complaint? Your Honor, no. I do not believe they've got to be alleged in the complaint. And that's based both upon the Century Surity v. Andrew case, which says facts are alleged in the lawsuit. So in the lawsuit, that could be deposition, that could be trial. It doesn't have to be specifically in the complaint itself. And the United National Frontier case says the insurer has the duty to investigate. So if there's a duty to investigate, that means it has to look at, it's supposed to be looking at something outside the complaint. Is that a California case? United National v. Frontier, no, that's a Nevada case. Nevada case. And I'd like to reserve my remaining time for rebuttal on the duty to defend. So no rebuttal. Oh. The key here is whether or not there are facts in the case that show potential disparagement. That's it. Is there a potential covered claim where there's derogation of the product or business? And the e-mail does that. It said he's banned. It doesn't say he's not selling it anymore or, you know, we're the new seller. That would be different. It said he is banned. And banning someone implies that something negative has happened. Nautilus cited in their brief to the Peerless case where the underlying court said, well, there wasn't damages to support your defamation argument. And I would submit if we're talking about whether or not they had enough to prove damages, then they've already lost because there was a potential for liability. Thank you. Thank you. I'd like to make just a couple of points. With respect to Flournoy, I think it's important to keep in mind that, first of all, Flournoy did not oppose our 2202 motion at the district court level, and I think that's an important factor to keep in mind. Also, Flournoy was not actually a defendant in the case. It was, you know, brought in as the real party in interest because it was alleged that Flournoy should have received the fruits of the partnership between Switzer and Access. So even if there's a finding against Nautilus' access, I don't think that should apply to Flournoy. That wasn't something that the district court really raised. So they argue that they may identify Mr. Wood, and so they have the same interests as Access does. I don't know that there's really any. They may argue that. I don't know that there's really any evidence to support that. And similarly, there is zero evidence in the record. There's no testimony, responses to discovery, anything from Cottage Hospital saying that when they received an email stating that a competitor was no longer banned from selling the product, that they understood that to mean Mr. Switzer. And that is just a clear factor that's required in a defamation claim. Well, they say it's obvious. I believe the argument is it's obvious. If you have one supplier and that supplier is banned, then we know who it is. Is that incorrect? But I don't know that there was one supplier. I don't know if Cottage Hospital knew that there was one supplier. And saying that someone is banned from selling a product, I don't think that would rise to the level of defamation in any way. There was no derogation of Switzer or his business mentioned anywhere in that email. And so there were no opposing – oh, it looks like I'm out of time, so I'll end it there. Thank you so much. Thank you. The – Did you have a precedent before marriage? No. Okay, thank you. Thank you. The case of Nautilus Insurance Company versus Access Medical and Flournoy Management is submitted, and we're adjourned for this session. All rise. The court, for this session, stands adjourned.
judges: Gould, Ikuta, Nelson